IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JENNIFER CRABB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  09-3219 |
| | ) | |
| SIU SCHOOL OF MEDICINE, | ) | |
| | ) | |
| Defendant. | ) | |

<u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendant SIU School of Medicine's Motion for Summary Judgment (d/e 7). Pro se Plaintiff Jennifer Crabb alleges that she is an individual with a disability under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 <u>et seq</u>. According to Crabb, the Defendant, Crabb's former employer, violated the ADA by failing to accommodate her disability, discriminating against her based on her disability, and retaliating against her for asserting her right to reasonable accommodations.  <u>Complaint (d/e 1)</u>.  Defendant asserts that it is entitled to summary judgment on each of Plaintiff's claims.  For the reasons set forth below, Defendant's Motion for Summary Judgment is allowed.

1

BACKGROUND

Crabb was hired by the Defendant as an Ambulatory Care Aide II in Defendant's Department of Internal Medicine on November 11, 2002. The primary function of the Ambulatory Care Aide II position was to serve as an initial contact person for the Department of Internal Medicine and to answer, screen, and direct all calls coming into the Department. See Motion for Summary Judgment, Ex. 2, Affidavit of Kay Titchenal (Titchenal Aff.), Ex. 5, Position Description.

The record reveals that Crabb suffers from depression and anxiety disorder. In 2007, Crabb requested intermittent Family and Medical Leave for the period from October 2, 2007, through March 31, 2008. See Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. In connection with this request, Crabb submitted a form entitled "SIU School of Medicine, Office of Human Resources, Employee Medical Leave – Certification of Physician or Practitioner," dated September 24, 2007. Plaintiff's Response to Motion for Summary Judgment (d/e 9) (Plaintiff's Response), Ex 4. The form was completed by licensed clinical social worker Tami Skaggs-Braidwood, who explained that Crabb required weekly psychotherapy sessions to address symptoms of depression and anxiety and

2

that she may also need time off work to stabilize if her symptoms became exacerbated. Skaggs-Braidwood opined that Crabb was able to perform the functions of her position. Defendant approved Crabb's request for intermittent Family and Medical Leave and advised Crabb's supervisor of her need to use intermittent leave but not of the underlying medical condition necessitating the leave.

In April 2008, Skaggs-Braidwood completed a form entitled "Request for Medical Documentation" from SIU's Office of Human Resources. Plaintiff's Response, Ex. 5. Skaggs-Braidwood indicated that Crabb could work 8:00 a.m. to 4:30 p.m. Monday through Friday, and could "function as an Ambulatory Care Aide II," with the following exceptions: (1) when experiencing an anxiety attack, Crabb would need to leave work to "regulate" and (2) at times, Crabb would experience anxiety that would prevent her from reporting to work. Id., p. 1. Skaggs-Braidwood reiterated Crabb's need for weekly therapy sessions to manage anxiety and depression. Id., p. 2. Without elaboration, Skaggs-Braidwood opined that Crabb would benefit from a transfer out of the Internal Medicine Department.

On April 8, 2008, the Defendant granted Crabb intermittent Family and Medical Leave for the period from April 1, 2008, through June 30,

3

2008, for occasional absences and to attend medical appointments. Plaintiff's Response, Ex. 6. Defendant informed Crabb that, should she need additional Family and Medical Leave after June 30, 2008, she was required to submit additional supporting medical documentation. Defendant also informed Crabb that she was entitled to a maximum of 450 hours of Family and Medical Leave within a one-year period.

On June 24, 2008, Plaintiff failed to report to work. Plaintiff asserts that she called her supervisor, Brenda Marcum, and informed her that she would not be at work because she was being hospitalized. Plaintiff's Response, p. 1. Plaintiff states that she told Marcum that she did not know when she would be able to return to work. Id.

Plaintiff was hospitalized from June 24 to June 27, 2008. She entered an "intensive partial hospitalization program" on June 30, 2008. Response, p. 1. On July 3, 2008, Kay Titchenal, Executive Director of the Office of Human Resources for the Southern Illinois University School of Medicine, sent Plaintiff a letter requesting that Plaintiff telephone the Office of Human Resources and report the reason for her absence from work. Titchenal Aff., Ex. 11. Also on July 3, 2008, Lisa Adams, a benefits counselor in Defendant's Office of Human Resources, sent Plaintiff a cover

4

memorandum and a number of forms purported to relate to Plaintiff's "continuous absence." Id., Ex. 12. The forms included a Leave Application, a Leave Certification of Physician or Practitioner, and a Release to Work form. Adams carbon copied Marcum, among others, on the memo.

By letter dated July 9, 2008, Defendant granted Crabb continuous leave from June 24, 2008, through August 5, 2008. Titchenal Aff., Ex. 13. The letter noted that Crabb had been approved for continuous Family and Medical Leave from June 24, 2008, through 11:15 a.m. on July 16, 2008, at which point she would have exhausted her current Family and Medical Leave Act entitlement. The letter further noted that Crabb had been approved for Extended Sick Leave Benefits for a total of 150 hours from July 1, 2008, through July 29, 2008. Additionally, the letter indicated that it was estimated that Crabb would be released to return to work on or before August 6, 2008, and that prior to returning to work, Crabb was required to submit a Release to Work form to the Office of Human Resources.

Titchenal avers that Crabb's Family and Medical Leave expired on July 16, 2008, that from July 16 through August 1, 2008, Crabb received time off under Extended Sick Leave Benefits, and that, beginning August 1,

2008, Crabb's leave became unpaid. Titchenal Aff. ¶ 13. On July 24, 2008, Adams spoke with Crabb on the telephone regarding Crabb's request for a State Universities Retirement System disability application. Adams informed Crabb that she would be required to provide medical documentation if she did not return to work on August 6, 2008. Motion for Summary Judgment, Ex. 1, Affidavit of Lisa Adams (Adams Aff.), ¶ 2. Crabb asked Adams if she could turn in the medical documentation when she submitted her disability application. Adams informed her that the medical documentation should be turned in as soon as possible and not with the disability application. Id.

Crabb contacted Adams on August 1 and August 7, 2008, stating each time that she had not yet received the disability application. According to Adams, Crabb did not inquire about the medical documentation or returning to work. Adams Aff., ¶ 3. On September 16, 2008, Crabb contacted Benefits Manager Kim Kavish to inquire about returning to work. On September 18, 2008, Adams contacted Crabb and explained the return to work process. Adams also informed Crabb that she needed to provide medical documentation to authorize her absence from August 6, 2008, forward. Id., ¶ 4 & Ex. 20.

Crabb provided Defendant with an Employee Release to Work Form, signed by James Black, M.D. dated September 24, 2008. <u>Plaintiff's Response</u>, Ex. 7. Dr. Black indicated that Crabb received treatment through August 25, 2008, in a partial hospitalization program at Memorial Medical Center. He further indicated that Crabb "[m]ay return to work on 9/25/08 with <u>no restrictions</u>." <u>Id</u>. (emphasis in the original). Crabb returned to work on September 29, 2008, the first Monday following her release to work.

On September 30, 2008, Adams informed Crabb that Defendant was still in need of documentation from Dr. Black indicating that Crabb was unable to work from August 6 through September 25, 2008. <u>Adams Aff.</u>, ¶ 5 & Ex. 21. In an email exchange among Crabb, Adams, and Susan Herron from the Illinois Department of Labor, Crabb was informed that she was not eligible for additional Family and Medical Leave because she did not work the requisite 1250 hours during the prior year. <u>Id</u>.

On October 3, 2008, Defendant received a faxed note from Dr. Black, dated October 1, 2008. <u>Titchenal Aff.</u> ¶ 15 & Ex. 15. In the note, Dr. Black stated as follows:

> Ms. Jennifer Crabb . . . was under my care in the Memorial

7

> Partial Hospital Program during part of the period you are concerned about, specifically 8/6 to 8/25. The partial program is essentially full-time psychiatric treatment and Ms. Crabb was unable to work during that period. . . . As stated in previous forms, she is released to work now without restriction.
>
> I cannot speak to her condition after 8/25 because I was not treating her.

Id., Ex. 15. On October 14, 2008, Defendant initiated civil service discharge proceedings against Crabb for unauthorized absence from August 26, 2008, through September 25, 2008, due to Crabb's failure to provide required documentation supporting the reason for her absence from work. Id., ¶ 16 & Ex. 16. A meeting was held on October 14, 2008, during which Crabb was offered the opportunity to provide documentation. She failed to do so.

On October 24, 2008, Crabb submitted a written rebuttal in the discharge proceedings. Titchenal Aff. ¶ 18 & Ex. 17. Crabb asserted that she was not able to work from August 26, 2008, to September 25, 2008 because she did not have the return to work form signed by Dr. Black. Crabb also provided a note, dated October 23, 2008, from Skaggs-Braidwood, indicating that she saw Crabb on September 18, 2008, for therapy, at which time Crabb was very anxious and depressed and exhibited noticeable weight loss. Id., Ex. 18. Skaggs-Braidwood noted that, during

8

the session, she strongly discouraged Crabb from returning to work because Crabb's status did not appear stabilized. Skaggs-Braidwood wrote, "It is my professional opinion, [sic] that Ms. Crabb was not ready to return to work at that time and needed more time to stabilize from her inpatient hospitalization and intensive outpatient services via the partial hospital program." Id.

On October 27, 2008, Defendant notified Crabb that it was pursuing civil service charges for discharge against her based on her failure to provide documentation for her absence from work from August 26, 2008, through September 25, 2008. Titchenal Aff. Ex. 19. Crabb received notice of her termination in November 2008. She filed a Charge of Discrimination with the Illinois Department of Human Rights in February 2009. Complaint, p. 10. She received a Right to Sue letter, dated July 10, 2009, and subsequently filed the pending Complaint. See id., p. 8-9.

## ANALYSIS

Crabb asserts that the Defendant failed to accommodate her disability, discriminated against her based on her disability, and retaliated against her for asserting her right to reasonable accommodations. Defendant argues that it is entitled to summary judgment on each of Crabb's claims.

9

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  A fact is material if it could affect the outcome of the suit under the applicable law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In ruling on a motion for summary judgment, the Court may not weigh the evidence, but must determine whether there is a genuine issue of material fact that warrants trial.  Id. at 249.  In making this determination, the Court must view the evidence in the light most favorable to the nonmoving party, here Plaintiff Crabb, and must draw all reasonable inferences in Crabb's favor.  See id. at 255.

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Additionally, an employer discriminates against a qualified individual with a disability by "not making

reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A).  The ADA also contains an anti-retaliation provision as follows: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).

I.    FAILURE TO ACCOMMODATE CLAIM

To maintain a claim for failure to accommodate, Crabb must establish the following three elements: (1) she is a qualified individual with a disability; (2) her employer was aware of her disability; and (3) her employer failed to reasonably accommodate that disability.  Ekstrand v. School District of Somerset, 583 F.3d 972, 975 (7th Cir. 2009).  The record evidence, viewed in the light most favorable to Crabb, reveals that Crabb is unable to establish the first and third elements.

In applicable part, the ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities . . . ."  42 U.S.C. § 12102(1)(A).  The only limited major life activity identified by

Crabb is working. To show that the life activity of working has been substantially limited, Crabb "must show that the impairment significantly restricts the ability to perform a class of jobs or a broad range of jobs in various classes. [A]n inability to perform a particular job for a particular employer is not sufficient to establish a substantial limitation on the ability to work; rather, the impairment must substantially limit employment generally." Winsley v. Cook County, 563 F.3d 598, 604 (7th Cir. 2009) (internal quotations and citation omitted); see also Squibb v. Memorial Medical Ctr., 497 F.3d 775, 782 (7th Cir. 2007) ("A demonstrated 'inability to perform a single, particular job' does not render an individual substantially limited in the major life activity of working." (quoting 29 C.F.R. § 1630.2(j)(3)(I)). The record is devoid of evidence that Crabb's depression and anxiety disorder has rendered her incapable of working generally. Indeed, the record supports a finding that Crabb is capable of working and even capable of performing her prior position of Ambulatory Care Aide II in the Department of Internal Medicine. The Return to Work form signed by Dr. Black indicated that Crabb could return to work with no restrictions on September 25, 2008, and that she could perform the duties of her position. Titchenal Aff., Ex. 14, p. 2. Thus, Crabb fails to establish

that she is a qualified individual with a disability, such that the ADA would apply.

Furthermore, even if Crabb is entitled to ADA protection, she cannot establish that the Defendant failed to reasonably accommodate her. "Time off may be a reasonable accommodation. However, an employee is not entitled to receive unlimited time off in her sole discretion." Turner v. Health Care Service Corp., 2009 WL 1210624 at *13 (N.D. Ill. May 4, 2009) (citing cases). "An employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance." Murray v. AT & T Mobility LLC, 2010 WL 1488794, at *4 (7th Cir. April 15, 2010) (citing EEOC v. Yellow Freight System Inc., 253 F.3d 943, 948-49 (7th Cir. 2001); Waggoner v. Olin Corp., 169 F.3d 481, 484 (7th Cir. 1999)). It is well-established in this circuit that "[t]he ADA does not require an employer to accommodate an employee who suffers a prolonged illness by allowing him an indefinite leave of absence." Nowak v. St. Rita High School, 142 F.3d 999, 1004 (7th Cir. 1998).

In the instant case, Defendant allowed Crabb to take intermittent and later continual leave in excess of the amount required under the Family and Medical Leave Act. Crabb's employment was terminated only when she

failed to provide medical documentation to support a portion of the time she was absent from work.  A person holding the Ambulatory Care Aide II position served as the initial contact person for the Department of Internal Medicine; the responsibilities of the position included answering, screening, and directing all calls coming in to the Department.  Given these responsibilities, it is not reasonable to require Defendant to accommodate Crabb's desire to miss work for as long as she believed it to be necessary without supporting medical documentation.  See Waggoner, 169 F.3d at 485.  Lisa Adams informed Crabb on July 24, 2008, that Crabb would be required to provide medical documentation if she did not return to work on August 6, 2008, and that this documentation should be submitted as soon as possible.  While Crabb eventually provided some additional medical documentation, she failed to provide any documentation to support her absence from work from August 26, 2008, through September 17, 2008, a period of several weeks.  Defendant was not legally required to allow this prolonged absence, without medical documentation, as an ADA accommodation.  Defendant is entitled to summary judgment on Crabb's failure to accommodate claim.

II.   DISCRIMINATION and RETALIATION CLAIMS

Crabb lacks direct evidence of ADA discrimination or retaliation, and thus, she must proceed under the burden-shifting method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  In order to establish a prima facie case of ADA discrimination, Crabb must show that: (1) she is disabled within the meaning of the ADA; (2) she was meeting her employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment.  Rooney v. Koch Air, LLC, 410 F.3d 376, 380-81 (7th Cir. 2005).  If Crabb is able to establish all four elements, the burden shifts to Defendant "to identify a non-discriminatory reason for its employment decision."  Id. at 381.  Once Defendant does so, Crabb must offer some evidence showing that the proffered reason is merely a pretext for unlawful discrimination.  See Buie v. Quad/Graphics, Inc., 366 F.3d 496, 503 (7th Cir. 2004).  The same burden shifting requirements apply to Crabb's retaliation claim if she can establish the following prima facie elements: (1) she engaged in protected activity, (2) she was performing her job satisfactorily, and (3) she was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity

did not suffer. See Squibb, 497 F.3d at 788.

As set forth in subsection A, Crabb cannot establish that she is disabled within the meaning of the ADA. Therefore, her ADA discrimination claim fails at step one of the prima facie case. Additionally, Crabb fails to identify any similarly situated employees who were treated more favorably, preventing her from establishing a prima facie case on both her discrimination and retaliation claims.

Even if Crabb could establish a prima facie case of discrimination or retaliation, her claims would nevertheless fail because she has offered no evidence to support a finding that Defendant's proffered reason for terminating her employment is pretextual. According to Defendant, Crabb's employment was terminated because she failed to provide documentation for her absence from work from August 26, 2008, through September 25, 2008.[1] This is a legitimate, non-discriminatory reason for the termination. Once an employer articulates a legitimate, non-discriminatory reason for an

---

[1] The Court notes that, after discharge proceedings were initiated, Crabb provided the Skaggs-Braidwood note. Titchenal Aff., Ex. 18. Skaggs-Braidwood, however, did not see Crabb for therapy until September 18, 2008, and the Return to Work form signed by Dr. Black certifies that Crabb was able to return to work without restrictions on September 25, 2008. Therefore, viewing the evidence in the light most favorable to Crabb, the Skaggs-Braidwood note applied only to the period from September 18, 2008, through September 25, 2008. Crabb's absence from work from August 26, 2008, through September 17, 2008, remained unsupported by medical documentation.

employment decision, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason was merely a pretext for intentional discrimination or retaliation. Buie, 366 F.3d at 503. "Pretext means a dishonest explanation, a lie rather than an oddity or an error," and "[s]howing pretext requires [p]roof that the defendant's explanation is unworthy of credence." Bodenstab v. County of Cook, 569 F.3d 651, 657 (7th Cir. 2009) (internal quotations and citations omitted).

Crabb lacks evidence to support a finding of pretext. Crabb argues that there is nothing in the record to establish that she was able to work at any time between August 26, 2008, and September 25, 2008. This argument ignores the reasonable obligation that Defendant placed on Crabb to provide medical documentation supporting her absence from work. Lisa Adams informed Crabb on July 24, 2008, that Crabb would be required to provide medical documentation if she did not return to work on August 6, 2008, and that this documentation should be submitted as soon as possible. Crabb failed to comply and failed to return to work until September 29, 2008. The applicable Collective Bargaining Agreement (CBA) provides that all requests for Family and Medical Leave due to illness must include a certification by a physician or other medical practitioner in a form

acceptable to Defendant. <u>Titchenal Aff.</u>, Ex. 4, p. 31. Additionally, under the CBA, if Defendant suspects that an employee is using sick leave for unauthorized purposes, it may require the employee to provide medical documentation certifying that the employee could not work on identified dates due to illness or injury. <u>Id</u>. Although Crabb eventually provided some additional documentation, her absence from work from August 26, 2008, through September 17, 2008, remained unsupported by medical documentation. Crabb cannot establish that the decision to terminate her employment due to unsupported absence was a pretext for unlawful discrimination or retaliation. Defendant is entitled to summary judgment on Crabb's ADA discrimination and retaliation claims as well.

## CONCLUSION

THEREFORE, for the reasons set forth above, Defendant SIU School of Medicine's Motion for Summary Judgment (d/e 7) is ALLOWED. Summary judgment is entered in favor of Defendant SIU School of Medicine and against Plaintiff Jennifer Crabb on all claims. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:  April 29, 2010

    FOR THE COURT:

                                                 s/ Jeanne E. Scott
                                          JEANNE E. SCOTT
                                    UNITED STATES DISTRICT JUDGE